CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

AUG 17 2009

CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| WILLIAM MAIDEN,<br><br>         *Plaintiff,*<br><br>v.<br><br>COUNTY OF ALBEMARLE, ET AL.,<br><br>         *Defendants.* | CIVIL NO. 3:09cv00034<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the Defendants' Motions to Dismiss [docket no.s 13, 14, and 28]. For the reasons that follow, the Defendants' motions will be granted.

I. BACKGROUND

Plaintiff William Maiden joined the Albemarle County Police Department as an animal control officer ("ACO") in April 1997. He alleges that shortly after his employment commenced, a fellow ACO, Sharon Tate, began sexually harassing him by flirting, subjecting him to unwanted touching, and making comments of a sexual nature. He alleges that the harassment continued throughout his employment, which ended when he was terminated on September 18, 2006. Specifically, Maiden alleges that Tate "rubbed Maiden's thigh, touched him, and stole equipment from his county-issued vehicle." (Compl. ¶ 11.) She also "rubbed her breasts against his arm, suggested that she and Maiden share a hotel room during an out-of-town business trip, and . . . commented to a third party that Maiden looked good in a pair of blue jeans." (Compl. ¶ 13.)

Maiden first complained to his supervisor, Todd Hopwood, about Tate's behavior in 2001. Hopwood told Maiden that "he could not do anything about a past offense." (Compl. ¶

10.) Maiden also notified Hopwood's supervisor, Sergeant George Noteman, of Tate's behavior and Hopwood's refusal to act. However, Noteman allegedly took no action. (Compl. ¶ 12.) Finally, in 2004, Maiden notified Sergeant Linda Jenkins about Tate's behavior. (Compl. ¶ 13.) Jenkins then initiated a sexual harassment investigation, but told Maiden that it was her first such investigation and that she "had no idea what she was doing." (Compl. ¶ 14.) Maiden alleges several shortcomings in Jenkins' investigation: (1) Jenkins failed to interview two male ACOs whom Maiden had listed as potential witnesses; (2) Jenkins asked Maiden to take a polygraph, representing to him that the Chief of Police, John Miller, had ordered it; (3) Jenkins was close friends with Tate, the subject of the investigation; and (4) Jenkins focused the investigation on Maiden rather than Tate, investigating issues unrelated to Maiden's charges against Tate.

Maiden is unaware of any steps taken by the ACPD to respond to or correct Tate's behavior following the 2004 investigation. However, Maiden alleges several instances of retaliation against him for making his complaint to Jenkins. Maiden alleges that at some point, Hopwood told a third party that "he would do everything that he could to get Maiden fired." (Compl. ¶ 19.) He alleges that he was given several written warnings for work-related incidents, including: (1) in the summer of 2004, he was warned for a slow response to an animal control call; and (2) in May 2004, he was warned for not wearing gloves when he was bitten by a cat, even though the ACPD does not provide animal handling gloves to its officers. Maiden also alleges that in May 2005, he was asked to represent the ACPD at the Human Society's national convention in Philadelphia, but that the ACPD refused to fund his trip and forced him to use personal days to attend the convention.

Finally, Maiden alleges that in 2005, the ACPD initiated an internal investigation against him for his alleged misrepresentations about his personal relationship with a witness to Tate's

Case 3:09-cv-00034-NKM-BWC   Document 33   Filed 08/17/09   Page 2 of 11   Pageid#: 88

harassment of him. Maiden alleges that this investigation was frivolous and retaliatory. During the investigation, on October 7, 2005, Hopwood and Lieutenant John Teixera interrogated Maiden for about two hours regarding his truthfulness during the 2004 sexual harassment investigation. Hopwood and Teixera allegedly became "extremely argumentative" and attempted to get Maiden to say that he was more than just friends with the witness in question. They also questioned Maiden about his relationships with other women, allegedly to embarrass Maiden and to deter him from pursuing his complaints about sexual harassment or retaliation.

On January 4, 2006, Maiden was suspended without pay for two days, and his take-home vehicle privileges were suspended for six months. Those penalties were upheld by Chief Miller on February 2, 2006. On July 20, 2006, a criminal charge was filed against Maiden for impersonating a police officer. Maiden was found not guilty of that charge following a trial on July 10, 2007. However, prior to his trial, on September 18, 2006, Chief Miller notified Maiden that he was being terminated, effective immediately, based on findings that he had impersonated a police officer. Maiden was not reinstated following his trial.

Maiden filed an administrative charge of discrimination in July 2007, and timely filed this suit after receiving a right to sue letter. Maiden now brings claims against Albemarle County as well as individual defendants Miller, Hopwood, Teixera and Jenkins for violations of Title VII. He claims that Tate's sexual harassment subjected him to a hostile work environment, that the Defendants subjected him to quid-pro-quo sexual harassment, and that the Defendants retaliated against him for engaging in protected activity under Title VII. The Defendants have moved to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6), and have moved to dismiss the claims against the individual Defendants for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## II. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.* at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). The plaintiffs must allege facts in the amended complaint that "state a claim to relief that is plausible on its face" and that "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## III. DISCUSSION

### A. INDIVIDUAL DEFENDANTS

The individual Defendants also argue that they should be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because Maiden failed to exhaust his administrative remedies for his claims against them. The burden of proving subject matter jurisdiction rests upon the party that seeks to invoke the court's authority. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991). When a defendant presents other defenses in addition to challenging the subject matter jurisdiction of the court, the question of subject matter jurisdiction must be decided first, as it affects the court's power to hear the case. *See Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n. 4 (4th Cir.1999).

The Defendants argue that Maiden named only the Albemarle County Police Department as his employer in his EEOC Charge of Discrimination (the "Charge"). While the Charge was not attached to the Complaint, the Defendants provided a copy of the Charge with their motion to dismiss. They are correct that the Charge names only the ACPD as the employer.

A plaintiff generally cannot bring a Title VII claim against a defendant unless that defendant is named in the charge to the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir.1998) ( "[A] civil action may be brought only against the respondent named in the charge." (quotation omitted)). The requirement to name all individual defendants as respondents in the EEOC charge serves two purposes. First, it notifies the charged party of the asserted violation. *Id.* Second, it brings the charged party before the EEOC to attempt reconciliation, thereby effectuating the Civil Rights Act's primary goal of securing voluntary compliance with the law. *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 458-59 (4th Cir.1988). The failure to name the individual defendants in the EEOC charge ordinarily means the plaintiff did not exhaust his administrative remedies against those parties, and the court must dismiss any claims against them. *Id.*

The Plaintiff indicated that he does not object to the motion to dismiss the individual Defendants on this ground. The Defendants' motion is therefore unopposed, and Maiden has not met his burden of showing that subject matter jurisdiction exists. Accordingly, the individual Defendants' motion to dismiss for lack of subject matter jurisdiction will be granted.

B. CLAIMS AGAINST ALBEMARLE COUNTY

*1. Sexual Harassment Claims*

Maiden brings both hostile work environment and quid pro quo sexual harassment claims

against Albemarle County.[1]  Both claims fail based on the allegations in the Complaint, and will be dismissed.  First, Maiden's hostile work environment claim is barred by the statute of limitations.  Title VII mandates that an EEOC charge must be filed within 300 days[2] after the alleged unlawful employment practice occurred.  42 U.S.C. § 2000e-5(e)(1).  Sexual harassment is a "continuing violation," so that only one act of the harassment need occur within the 300 day window.  *Wilkinson v. Rumsfeld*, 100 Fed.Appx. 155, 158 (4th Cir. 2004) ("[A] hostile environment claim involves one unlawful employment practice that can be comprised of a series of separate incidents.  As long as one component incident occurred within the applicable limitations period, every component incident of the hostile environment may be considered for purposes of liability regardless of when those events occurred." (internal citation omitted)).

Maiden was terminated on September 18, 2006, and he filed his EEOC Charge on July 2, 2007.  Thus, he had to allege that an incident of sexual harassment occurred on or after September 5, 2006.  All of the specific allegations of sexual harassment in the Complaint are of incidents that occurred prior to 2004, and there are no allegations that relate to the thirteen days

---

[1] Although it was not raised by either party in the briefs on the pending motions, at the hearing before the Court on the motions to dismiss, the Defendants noted in passing that Maiden may have failed to exhaust his administrative remedies with respect to his sexual harassment claims. The Fourth Circuit has held that "if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Chacko v. Patuxent Institution*, 429 F.3d 505, 509-10 (4th Cir. 2005); *see also Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247-48 (4th Cir.2000) ("If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit."); *Miles v. Dell, Inc.*, 429 F.3d 480, 491-92 (4th Cir. 2005). Although Maiden's allegations in his EEOC Charge relate primarily to retaliation, Maiden did provide a general allegation of sexual harassment in his EEOC charge. He claimed that he was subjected to sexual harassment beginning shortly after his employment, that his employer failed to remedy the harassment, and that his employer retaliated against him for complaining about the harassment. An investigation of his retaliation claim would be reasonably likely to include an investigation of the sexual harassment alluded to the EEOC Charge. Therefore, at this point in the litigation, I cannot conclude that Maiden has failed to exhaust his administrative remedies with respect to these claims.

[2] The 300-day limitations period applies in states where charges are originally filed with or are automatically forwarded by the EEOC to a "state deferral agency," which investigates and adjudicates the charge. Virginia is a deferral state, and the agency designated to receive charges of discrimination is the Virginia Council on Human Rights. 29 C.F.R. § 1601.74(a); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002). Maiden filed his charge with the Virginia Council on Human Rights; accordingly, the 300-day statute of limitations applies to his claims.

prior to Maiden's termination. Maiden does allege generally that the sexual harassment continued throughout his employment, but this general allegation is insufficient to allow the Court to draw the conclusion that at least one incidence of harassment occurred within the limitations period. Accordingly, his hostile work environment claim will be dismissed as barred by the statute of limitations.

Maiden's quid pro quo claim will also be dismissed, because Maiden has failed to allege the requisite elements of the claim. Quid pro quo sexual harassment refers to a situation where a supervisor explicitly makes submission to his or her unwelcome sexual advances a condition of employment. It also encompasses situations where submission to unwelcome sexual advances is not explicitly made a condition of employment, but the rejection of such advances is nevertheless the motivation underlying an employer's decision to take an adverse employment action against an employee. *See Ellis v. Director, CIA*, 1999 WL 704692, *3 (4th Cir. Sept.10, 1999) (discussing quid pro quo sexual harassment and explaining that "'[w]hen a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands,'" he or she establishes a violation of Title VII (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998))).

Here, Maiden essentially attempts to couch his retaliation claim in the guise of a quid pro quo claim. Maiden's theory of his quid pro quo claim is that his superiors forced him to submit to Tate's sexual harassment in return for their ceasing to retaliate against him for complaining of that harassment.[3] Maiden does not argue that he was terminated because he rejected Tate's sexual advances; rather, he alleged that he was terminated because he complained about them. This is the essence of a retaliation claim, not a quid pro quo claim. It was apparently immaterial

---

[3] Tate was not Maiden's supervisor, and Maiden did not allege that Tate herself required a quid pro quo of Maiden. Maiden also never alleged that his supervisors made any sexual advances towards him.

Case 3:09-cv-00034-NKM-BWC Document 33 Filed 08/17/09 Page 7 of 11 Pageid#: 93

whether Maiden accepted or rejected Tate's advances, as long as he did not complain about them in the workplace. Therefore, Maiden has not alleged that he was terminated or otherwise denied a job benefit because he rejected Tate's advances, and therefore, he has failed to state a quid pro quo sexual harassment claim.

## 2. Retaliation

Maiden alleges that his termination was in retaliation for his complaints about Tate's sexual harassment.[4] The *McDonnell Douglas* burden-shifting scheme applies in analyzing retaliation claims under Title VII. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985); *Smith v. First Union Nat. Bank*, 202 F.3d 234, 248 (4th Cir. 2000). First, the plaintiff must establish a *prima facie* case of retaliation. *See Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir.1997). The burden then shifts to the employer to produce a legitimate nondiscriminatory reason for the adverse action. *See id.* If it does so, the plaintiff must demonstrate that the employer's reason was mere pretext for retaliation by showing "both that the reason was false and that discrimination was the real reason for the challenged conduct." *Jiminez v. Mary Washington College*, 57 F.3d 369, 377-78 (4th Cir.1995) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

To establish a prima facie case of retaliation, the employee must prove: (1) the employee engaged in a protected activity; (2) the employer took an adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir.2001). To satisfy the first element,

---

[4] Maiden alleges additional incidences of retaliation; however, all the allegedly retaliatory actions besides the termination occurred more than 300 days prior to the filing of Maiden's EEOC Charge, and are thus time-barred. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

-8-

Case 3:09-cv-00034-NKM-BWC   Document 33   Filed 08/17/09   Page 8 of 11   Pageid#: 94

the employee must show that he participated in an investigation or proceeding under Title VII, by filing a charge with the EEOC, for example, or that he opposed discriminatory practices in the workplace, such as by "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 259 (4th Cir.1998). The second element is satisfied by showing that a retaliatory act had an adverse effect on the terms, conditions, or benefits of employment. *Von Gunten,* 243 F.3d at 866.

Even if a protected activity and adverse employment action are shown, the employee must satisfy the causation element to establish a prima facie retaliation case. The employee must show that the adverse employment action took place after the protected activity, *Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 651 (4th Cir.2002), and because of the protected activity, *Dowe v. Total Action Against Poverty,* 145 F.3d 653, 657 (4th Cir.1998). The adverse employment action will not take place "because of" the protected activity unless the relevant decisionmaker was aware that the employee had engaged in the protected activity. *Dowe,* 145 F.3d at 657.

In Maiden's case, he clearly alleges protected activity (complaining about sexual harassment to various superiors) and an adverse employment action (termination). Thus, the issue in dispute is whether Maiden has adequately alleged the causation element of a *prima facie* case. Where the employer clearly knows of the protected activity, the discharge of the employee *soon after* the protected activity is "strongly suggestive of retaliatory motive" and is considered indirect proof of causation. *See Carter v. Ball,* 33 F.3d 450, 460 (4th Cir. 1994). However, "'mere knowledge on the part of an employer that an employee ... has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate

Case 3:09-cv-00034-NKM-BWC   Document 33   Filed 08/17/09   Page 9 of 11   Pageid#: 95

reasons' for adverse personnel action against that employee." *Id.* (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)).

Maiden alleges virtually no direct evidence of retaliation. The only allegation of any retaliatory motive within the ACPD is a single statement by Lieutenant Hopwood that he would do everything he could to get Maiden fired. Hopwood allegedly made this statement at some point during the 2004 investigation into Maiden's complaint of sexual harassment. However, Maiden did not allege that Hopwood was actually involved in the decision to terminate Maiden, and there are no allegations of any action taken by Hopwood to try to get Maiden fired.

While Maiden was terminated after he complained to his superiors about Tate's sexual harassment, the lapse of time between Maiden's first complaint and his ultimate termination weighs against a finding of causation. Maiden alleged that he first complained about Tate's sexual harassment of him in 2001. He complained again in January 2004, which is when Sergeant Jenkins began an investigation into his complaint. However, Maiden was not terminated until September 2006.

The lack of allegations of direct evidence of retaliation in combination with the lapse of time between Maiden's initial complaints of sexual harassment and his ultimate termination suggests that his termination was not in retaliation for his protected Title VII activity. This is further supported by allegations that show ample opportunities for the ACPD to fire Maiden prior to 2006, had they wished to do so in retaliation for his complaints about sexual harassment. For example, Maiden alleged that the ACPD conducted an internal investigation of him in 2005, and that he was suspended for two days in January 2006. However, even though Maiden alleges that both actions were retaliatory, Maiden was not terminated as a result of either. That he was not terminated until there were criminal charges pending against him speaks strongly against an

inference of retaliatory motive.

Finally, even if Maiden could make a prima facie case of retaliation, he has failed to allege sufficient facts to infer that the ACPD's reason for his termination was pretext. Maiden alleges that he was told that he was being terminated based on the ACPD's finding that he had impersonated a police officer. At the time of his termination, Maiden was facing pending criminal charges for impersonating a police officer. Although Maiden was ultimately found not guilty of those charges after a trial in July 2007, he has not alleged any facts to suggest that the ACPD's finding, which may have been based on a standard less stringent than "beyond a reasonable doubt," was false. The ACPD's given reason for Maiden's termination is a legitimate non-discriminatory reason, and Maiden has not alleged sufficient facts to lead to a plausible inference that this reason was a pretext for retaliation. Accordingly, Maiden has failed to state a claim of retaliation.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss will be granted. An appropriate order will follow.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and the accompanying order to all counsel of record.

ENTERED: This 17th Day of August, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE